FRANK D. MCKENDALL *vs.* TUDOR ARMS, INC.

APRIL 2, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CONDON, J. This is an action of assumpsit brought by Frank D. McKendall of Providence against Tudor Arms,

Inc., a Rhode Island corporation. The case was tried before a justice of the superior court sitting without a jury and resulted in a decision for the plaintiff for $346.25. To this decision both parties excepted and duly prosecuted their bills of exceptions to this court and were heard by us thereon at the same hearing.

The controversy between the parties arose out of a certain agreement in writing entered into between them on February 1, 1932. The clauses of said agreement pertinent to the question before us are here set out as follows:

"1. The first party agrees to continue its present loan without demanding payment of the principal or any part thereof for the period of seven months from the date hereof, said loan being covered and secured by a first mortgage for twenty thousand ($20,000) dollars, and a second mortgage for seventy-five thousand ($75,000) dollars, on the apartment house property at the corner of Broad Street and Wheeler Avenue in the City of Cranston in said County, and agrees that he will not foreclose or institute or commence any foreclosure proceedings under said mortgage or either of them for and during said period of seven months.

"2. The second party agrees that it will pay the first party interest on the present amount of said loan so secured by said mortgages as aforesaid once each month during said period of seven months at the times and at the rate heretofore in force.

"3. The second party further agrees that it will pay during said period of said seven months from the date hereof all other obligations against said property including gas bills, electric current bills, insurance premiums, installments on gas stoves and refrigerators, and all other necessary operating expenses, but no salary or wages except that of the janitor.

"4. And whereas the parties hereto have agreed to forthwith pay the tax assessed on said property in 1931 by the City of Cranston they, for the consideration aforesaid, hereby agree that the second party shall repay as soon as may be itself and the first party equally the money so advanced by them to pay said taxes.

"5. The second party agrees to pay nothing except the amounts and expenses above specified during said period of seven months and to render a monthly statement to the first party of all receipts and disbursements each month at the time it pays the first party interest on said loan."

It will be seen from the foregoing that this agreement related to the continued occupancy by the defendant, under certain specifically enumerated conditions, of an apartment house in the city of Cranston belonging to the defendant upon which were two mortgages owned by the plaintiff. It appears from the evidence that the plaintiff was entitled to foreclose these mortgages because the loan secured by them was overdue at the time of the making of the above-mentioned agreement.

By the agreement in question, the plaintiff agreed to forego his right to foreclose, during a period of seven months from the first day of February, 1932, the date of the agreement, and the defendant agreed to make certain payments and no others. During said period, the agreement was satisfactorily performed and a few days before its termination the parties entered into a renewal of it. This renewal was informally entered into by appending to the original writing the following: "The above agreement is renewed this twenty fifth day of August, 1932 for an additional period of six months." By this apparently simple supplement to the formally drafted agreement, the seed of this troublesome legal controversy was sown.

There is no dispute between the parties as to the intent and effect of the original writing. Their differences arise solely over the legal effect which should be given to this so-called renewal agreement. The defendant contends that the agreement, meaning only what it meant on the first day of February, 1932, is extended for a further period of six months, and with this contention, the plaintiff agrees, except that he insists that the language of the original agreement operates on new circumstances arising during the renewal period if, in the agreement, language can be found which indicates clearly that the parties so intended, by contemplation at least, when they entered into the renewal agreement.

The new circumstances which arose during the renewal period was the coming due of taxes, payable to the city of Cranston on October 10, 1932. These taxes were assessed on the property of the defendant on June 15, 1932. It is agreed by the parties that these taxes cannot be included under the original agreement, as they were not assessed at the date of the agreement and were not due and payable at its date of expiration. When the expiration date of the renewal agreement came around, the parties disagreed over the payment of these taxes for 1932, and the plaintiff foreclosed his mortgage at public sale on April 15, 1933, to the McKendall Land Co., Inc., which corporation purchased the mortgaged property, subject to unpaid 1932 taxes, for $26,500 and later, through a receiver appointed by the superior court to collect the rents of the property, pending the determination of an ejectment suit brought against the defendant by said company, paid the greater part of said 1932 taxes, to wit, $3,000. The balance of $335.35 was paid by the plaintiff here, who brought his action for this amount and also for the amount paid by the McKendall Land Co. The superior court gave decision for the plaintiff on his claim for $335.35, with interest, but denied his claim for the $3,000, which was paid by the McKendall Land Co. The plaintiff excepted to the decision of the trial justice on

the ground that he was entitled to be reimbursed for the sum paid by the company, because the purchase price of the mortgaged premises was diminished to this extent by reason of the company taking title subject to unpaid taxes. In the view hereafter expressed by us, it will not be necessary to consider this exception.

After a careful consideration of the record and of this agreement, we have come to the conclusion that there is one controlling question in this case, namely, did the so-called renewal agreement obligate the defendant to the plaintiff to pay the 1932 taxes? The trial justice answered this question in the affirmative but did not in his rescript specify the grounds upon which he based his conclusion. Inasmuch as the question is exclusively one of construing the effect of the terms of a written instrument, about which there is no dispute other than one of the legal intendment of the language used therein, we are not limited by the decision of the trial justice in our consideration of the question before us.

We are of the opinion that the renewal agreement, by its terms, did not obligate the defendant to pay the 1932 taxes. Our reason for this conclusion may be briefly stated. To ascertain the intent of the parties to this agreement, we must look at the whole instrument in which they have chosen to express their mutual obligations. The plaintiff admits that the original agreement did not bind the defendant to pay the taxes assessed on June 15, 1932, but contends that the renewal of the agreement did, because at that time these taxes were an obligation against the property and, by virtue of the third clause of the contract, this obligation is included in the class which the defendant therein expressly promised to pay. The plaintiff does not offer any sound reason in support of his contention, and the trial justice appears to have likewise failed to furnish us any reason for sustaining it.

Clause three of the original agreement cannot thus be made to serve as a foundation for the plaintiff's contention.

A careful reading of the clauses of the agreement will disclose that the parties definitely agreed upon certain matters and set them out in separate clauses. Clause one contains the promise of the plaintiff to continue the existing loans and to forego any right of foreclosure of the mortgages securing said loans during the term of the agreement. Then there follows clause two, in which the defendant promises to pay monthly the interest accruing on said loans; clause three, in which the defendant agrees to pay all other obligations against said property, and which specifically enumerates what those obligations are, together with other necessary operating expenses of the apartment house, but which in this instance specifically excludes salaries or wages, except that of the janitor; clause four, in which taxes due on the property are separately dealt with apart from the previously mentioned obligations.

Clearly it would seem that the parties did not contemplate that any taxes were dealt with in the clauses preceding clause four. The city tax of 1931 was the subject of a separate and distinct agreement in that clause and it will be noticed that it did not contain a promise by the defendant to pay that tax but only a promise to repay both itself and the plaintiff equally "as soon as may be" the money which both would advance for the payment of said tax under an agreement by them to pay it, which is only recited in the written agreement of February 1, 1932. Clause five, as if to make assurance doubly sure that no other obligations will be read into the contract, expressly stipulates that the defendant "agrees to pay nothing except the amounts and expenses above *specified* . . ." (italics ours)

Here in these clauses, which contain the essentials of the whole agreement, the parties set out explicitly the matters upon which the written agreement was to operate. Significantly, in view of the controversy which has arisen between the parties, the city tax of 1931 alone was mentioned and that was mentioned by them separately and apart, and in a manner distinctly different from that in

which other matters were considered. It would do great violence to the language which the parties themselves have used to express their agreement to imply that merely by reason of the 1932 taxes falling due, during the renewal period, such taxes became payable by virtue of clause three in the same manner as the obligations specifically enumerated under said clause. This construction of the agreement would result in including the 1932 taxes under clause three where it is admitted that taxes were not included in the original agreement, and would be, in effect, the writing of a new agreement for the parties by this court.

The plaintiff's difficulty arises from his failure to see to it that the payment of the 1932 taxes was taken care of by the renewal agreement in the same manner as was the payment of the 1931 taxes in clause four of the original agreement, or in some other manner agreeable to both parties. Not having done this, he cannot expect this court to write a new agreement for him.

In our discussion of this question, we have not felt it necessary to cite any authorities in view of the fact that it could be answered by a simple construction of the agreements based upon the well settled and undisputed rules of construction of written instruments. We are, therefore, of the opinion that the trial justice erred in his finding that the taxes for 1932 were included in the renewal agreement. Holding this view, which is decisive of the case, it is not necessary to consider the other points raised in the briefs and arguments.

The exception of the plaintiff to the decision of the trial justice is overruled, and the defendant's exception to said decision is sustained.

The plaintiff may appear, if he shall see fit, on April 13, 1936, and show cause, if any he has, why the case should not be remitted to the superior court with direction to enter judgment for the defendant.

*McGovern & Slattery, James A. Higgins,* for plaintiff.
*Malcolm D. Champlin,* for defendant.